We'll hear argument in Case 12-9490, Navarette v. California. Mr. Clavin. Mr. Chief Justice, and may it please the Court, in this case, the Court should hold that officers acting on anonymous tips must corroborate the tips' assertions of illegal conduct, as well as the identifying details, before making a stop, whether that tip involves erratic driving, illegal gun possession, or any other allegation of misconduct. Now, the State proposes that the reasonable suspicion rule established in Terry v. Ohio, which courts and law enforcement officials have been applying now for more than 40 years, should be altered, so that now it applies as a sliding scale where the level of suspicion varies depending on the nature of the crime that an anonymous tipster claims someone has committed. Roberts So if the tip is this car is driving by and, you know, throwing bombs out the window, okay, every, you know, whatever, every 500 yards, the police find the car, they have to wait until they see the person actually throw a bomb out the window themselves before pulling them over? Well, Your Honor, in terms of the reasonable suspicion, yes, there's — if all they have is an anonymous tip and there is no — they have no way of corroborating any of the — any of the innocent details except that they can identify the car, then yes, under the Florida J.L. Roberts So your answer is yes, the car is going there and throwing a bomb out and it goes off, but he has to wait until he sees them throw out another bomb? Your Honor, under the Florida J.L., the Court has said that when they are looking at — when all that they are able to corroborate are obvious, reasonably observable details such as that, then there is no basis for the Court to go beyond that answer. I thought that J.L. gave an example of an exception, that the report is somebody is carrying a bomb. Well, there is that exception, Your Honor, and in Florida J.L., it said that it was not — the Court said that it was not required on the facts of that case to speculate about a situation where such a serious — Throwing bombs doesn't count, but carrying a bomb does. Well, Your Honor — Were they throwing bombs that they weren't carrying? Your Honor, that would not make a difference. However, in this case, in terms of adjusting the reasonable suspicion standard, the Court should not address that. The Court has never said — Could I ask you — I'm sorry. Could I ask you what you mean by an anonymous tip? Suppose somebody calls up 911 and gives a name. Does that make it not an anonymous tip? Your Honor, technically it would not be, but in the circumstances here, I think it should be treated as an anonymous tip because, again, the name could be false when the tip first comes in. If it's corroborated in some way, then — Well, how would you corroborate it? Let's say the person calls up and gives a name and gives an address. So what would be necessary? What would the police have to do then before they could stop the vehicle, other than observing the vehicle do something illegal? Well, again, if all they have is an assertion by the tipster that this is the name and the address, if the officers can somehow, again, by caller identification or some other method, verify that, in fact, that is the person, so that somewhere down the line that person will be held accountable for a false tip, then it can be treated differently. Well, what if you have caller ID? I mean, you have one of these anonymous flip phones, right? You can buy them, it's prepaid, and you call up and say, I'm, you know, John Smith, I've seen this, and they look, there's the caller ID, there's a number, then they can do it? No, Your Honor. That would not — if all they have is a number, then they are not going to be able to use that as a basis for pointing. Well, isn't that all caller ID gives you? Well, with caller ID, if they can — if they are somehow able to verify, not just that this is coming from this phone, but that, in fact, there is a particular person there, if they can identify the location, that sort of thing, as the tip gets more and more like the known informant in the Adams case, then the officers can take more solace in the fact that that person is going to be able to be held responsible. In Adams, of course, we have a situation where there is a known informant who can be arrested immediately if, in fact, the tip turns out to be false. The problem with so many of these cases with the 911 tape, 911 caller, is that even if — is that there's not going to be any sort of accountability, even if they do manage to identify the person, in terms of showing the tip is false, where the allegation, for example, is weaving, there's no way to prove that that's false. Alitoso, if we transport the standard that applies outside of the vehicle context to this context, what would happen in this situation? A person calls up and says, this is my name, this is my address, and it's not blocked by caller ID, so the 911 operator can see that that's the name, that's the address. The person says, this guy ran me off the road. The police find the vehicle, they drive behind the vehicle for a while, they don't see any violation. So then they think, well, this guy must have lied, so then they're going to prosecute the guy for calling that in? No, Your Honor, because they still wouldn't be able to prosecute them because the fact that the vehicle is now not weaving doesn't show that they were, the vehicle was or were not weaving. So, I mean, your argument goes well beyond, you're saying this has to do with anonymous tips, but it really goes well beyond anonymous tips. It covers tips where you know exactly who called in. And what you're saying is that they really can never stop a vehicle, no matter what kind of a tip they get, unless they see the vehicle committing an illegal act. That's the argument. No, I don't think it goes that far, Your Honor. I think as the tip becomes, as the tip contains more detail and as the tipster becomes more accountable for a false tip, again, getting more overt toward the Anonymous v. Kennedy, then at some point the anonymous tip would be, or the tip would be. Give me an example of a situation in which the police can pull somebody over after receiving a tip without actually seeing the vehicle commit an illegal act. I think, Your Honor, in a situation where the caller calls in, says I've been, this car is driving erratically, the caller then says I'm following the car, now we're at such and such a location, the vehicle has just done something else that's wrong and they continue to follow up to the point where, okay, I can now see the patrol car coming up. Again, where the tipster is putting his or her credibility on the line and becomes more and more accountable toward the Anonymous v. Kennedy known informant, then if you add that together under the totality of the circumstances, then you will have a situation probably to do it. I think it's going to be rare, and I think it should be rare, because it is so easy as the Court has indicated, the Court has shown skepticism for anonymous tips because the tipsters are able to harass other people without running any risk of being held accountable, and it should be particularly skeptical in the case of a, of anonymous tips about erratic driving, because with the ubiquitous cell phones, it's so easy for somebody who is on the road, who has been annoyed by somebody else, to be able to just pull out the cell phone and call in a false tip. And so in those cases. Roberts Do we have any indication that this is a serious problem, the false tips? Well, there's no empirical evidence in the record. However, it was the same concern that led the Court in J.L. to refuse to adopt the firearm exception, the concern that making it so easy for people to subject others to the harassment of a, of a stop and, and potential, potential search concerned the Court enough that it denied, it refused to adopt the firearm exception. And in this case, we have a firearm exception, we have a, a, an exception that's being requested that's doctrinally the same as a firearm exception. There, there is no indication in the record that drunk driving on its own in totality presents a more serious threat to public safety than, than firearms do. In fact, it, it's more than that. Well, is that, is that true? I mean, how many people die from drunk driving versus how many people die from firearms? The most recent, the most recent statistics show a little more, about 11,000 people die from homicides by firearms, and it's usually under 10,000 now that are driving, dying by drunk driving. And in terms of public safety, approximately two-thirds of the people who die as a result of drunk driving are the drunk drivers themselves. So in fact, the overall threat to public safety is not as great when you're talking about drunk driving as, as with firearms. And the Court indicated in J.L. that it was specifically concerned about the serious threat that armed criminals pose to public safety, and despite that serious threat, they denied, the Court denied the firearms exception. Now, what the Court, oh, excuse me. Roberts, we have, we have held that the, the standards are loosened in the vehicle context, because your expectation of privacy is diminished when you're out on the road driving along in, in a vehicle. Does that have any competence? Well, I don't think so in this case, Your Honor, because even though it's diminished as, as opposed to, for example, in the home, it's, in J.L., of course, the person was on a public sidewalk, the person was not in the home. And in, in Proust, the Court talked about the fact that in, in modern daytimes, people, a lot of people will feel more of a sense of security. They'll feel more privacy in a vehicle than they would out on the street. But in a context in which we've approved sobriety checkpoints, why should we get bent out of shape over this? Well, Your Honor, in the sobriety checkpoint case, again, the Court has looked at the very rock bottom in terms of intrusion, the fact that somebody is, along with a number of other people, that they have to submit to a brief stop. It has put that on the lowest, on the lowest level. And so it's a, the Court has not approved any situation where individual vehicles, as in this case, are, are pulled over without reasonable suspicion that, in fact, somebody in that vehicle is engaged in, in criminal activity. Well, but why is that an important line? Why should we be more concerned when an individual automobile is pulled over? Well, because the, the intrusion is greater, Your Honor. And in the, in the Martínez-Fuentes case and the Brignone-Ponce case, the Court talked about the very minimal intrusion of the checkpoints, as opposed to, and Proust talks about this also, that there is a serious intrusion when somebody is pulled over, you know, you have the activation of, of the emergency lights, you have a siren, you're pulled over, possibly in, in a neighborhood where, where you're known and people see it, possibly out in the middle of a road in the middle of the night, as in the, the Wells case, and in either circumstance, it is a, a serious intrusion and one that people are not going to take that lightly. So it's a, it's a different situation, and the Court, again, in, if they're going to be pulling over individual cars, signaling them out for, for stops, which could, under the Court's rules, again, the, the driver, all the passengers, can be ordered out of the car. If, if the Terry standards are met, they could indeed be put at risk. Sotomayor, White suggested that we don't have an absolute rule with respect to requiring independent corroboration of the actual illegal conduct. In White, the, the tipster gave future predictive information, but all of it was innocent. Somebody driving a car and going to a particular place. Now you're asking us to import that wholesale. Why don't we just stick to our general standard, which is the totality of the circumstances, and look at what failure there is in the logic of the California court below. It, it looked at the quality of the information regarding the vehicle, which is a legitimate The tipster will tell you what the vehicle looks like and its license plate, or enough information so that it can be identified. It looked at the caller actually witnessing the event and giving you enough detail to know that it's not a legal conclusion, but an actual event that suggests recklessness, and corroboration of the, of the details given by the tipster. Isn't that the application of our traditional test? No, Your Honor, and that's exactly what the court was looking at in Florida JL versus JL. This is a Well, that's just not true in Florida JL, because the individual didn't match the description completely, and there were two or three individuals there, not just one. And so, and there was no predictive or no other detail other than someone in this general area. Well, there was no predictive detail, but in JL, the tip was a young black male in a plaid shirt at a bus stop. Those details were confirmed. Correct me if I'm wrong. I might be missing something. The tip in JL was not a, did not assert that a crime was being committed, that there was something suspicious. There was no crime in possession of the gun. Correct me if I'm wrong. Well, it was possession of the gun. But here, here, the report was a crime, or is that not a correct distinction? Well, in JL, it didn't say illegal gun possession, but presumably the tipster thought it was illegal gun possession and the officer must have thought it was illegal gun possession. Well, and it was illegal. What? It was illegal. Well, it was, because it turned out to be under 21. But the tip in and of itself did not indicate that a crime was being committed, which is different from this case. I'll agree that the tipster didn't say it, but I think the assaulter not. No, I'm talking about an interpretation of what the tip said. Well, but unless the implication is that the gun possession is illegal, then there's no reason for the officer to. No, a Terry stop. You might have had grounds for a Terry stop. But if the tip calls it – if the tip says I'm looking at a case of gun possession that, as far as I know, is perfectly legal, it's like in this case, if the tip came in and said I've just been passed by a car who's – which was driven very skillfully. There's no point in pursuing the tip in JL unless there's some element of illegality. Well, I think there's a – but I think for our purposes we can assume that the cases are comparable in that respect. Okay. But not comparable, perhaps, in others. Okay. Justice Sotomayor, going back to your concern, in – so in Florida v. JL, those elements were confirmed, and the – but the Court found that the fact that those elements, which could be observable by anybody who was looking at the situation, and probably even more clearly a personal observation where the plaid shirt was identified, that that didn't give any reason to believe that the person was also being truthful in talking about concealed – No reason to believe the caller had personal knowledge. Pardon me? No reason to believe the person had personal knowledge. Well, but personal knowledge of – okay. He didn't say that the gun was pulled on him or that – or how he saw it or how he knew. Right. There was no indication as to how the person knew about the gun. Some – you don't think there's something significant about calling up and saying someone forced me off the road? Well, there is something significant, Your Honor, but by itself that just gives the officers some reason to go check and see whether, in fact, they – there is a chance to corroborate. And in the case of an inebriated driver, the fact that the driver is inebriated is concealed in the same way that J.L.'s gun was, unless there's some sort of erratic driving going on. What if there's no way for the officer to corroborate the allegation? You know, you see somebody on the street grab a young child, throw her in the trunk of the car, and then take off. And somebody calls with an anonymous tip saying this fellow, you know, in this car has got a child in the trunk. The police can follow the person, you know, for hours and they're not going to see any corroborating evidence. Can they pull that car over? Well, Your Honor, if that's all they have to go on, then under Florida v. J.L.,  If they were to get the car over. So just to be clear, your answer in that case is that the police cannot pull that car over? If – in terms of – obviously, it's a more serious situation, but the Court has not held that this is a serious situation.  Well, let's expand it a little bit. It's a one-lane, two-lane road going down, but it merges into, you know, an eight-lane expressway. You have one police car. It's going to be hard for that police car to maintain surveillance. And you say they just got to let them go. Well, Your Honor, I think if you're talking in terms of just the seriousness and you're looking in terms of the Florida v. J.L. exception, the Court seemed to be in an extreme where the Court would find a search or a stop justified without any showing of reluctance. Well, just in terms of your position, do you think they could pull the car over? No, Your Honor. I don't think it would change because, again, it's just the seriousness of the claim should not affect whether there is, in fact, reasonable suspicion. You get an A for consistency. I'm not sure about common sense. No, I'm not sure he gets an A for consistency. I thought you said you acknowledged or didn't repudiate the statement, in our opinion, in J.L., that if there was a bomb in the car, that would be something else. What if there's in the car the tip is this person has an atomic bomb given him by Al-Qaeda. He is driving it into the center of Los Angeles to eradicate the entire city, okay? Let it go? Your Honor, I believe it's not. He tells you the license number, where the car is. You can't stop the car? I believe consistent with what the Court said in Porter v. J.L., that may be a situation, again, where the Court decides that the risk is so great. So you say he's not consistent. I mean, there's no reason. No, but it would not be – it should not change – it should not be in terms of level of suspicion required under Terry. The reasonable suspicion standard should not change on that. The Court seemed to be indicating in Florida v. J.L. that at some point the level of danger would become so great that, in fact, there was so great a chance. So the atomic bomb, the level of danger is great enough, but the young girl in the trunk, the level of danger is not great enough? Your Honor, what I'm saying is in either of those situations, the Court may want to consider some sort of exception to the reasonable suspicion standard. And that seems to be the case. But you're giving away the principle. Kennedy, what is your position of what you would do if you were on this Court with those hypotheticals? What is your position that should happen in those two hypotheticals? Well, Your Honor, I think that the Court may well want to craft some sort of a bit more. What is your position as to what the Court should do in those cases? Well, let me start off by saying, if I could, that I don't think the Court needs to reach that question in this case, just as it did not need to reach that question in J.L. I understand it, but we're interested in the hypothetical. Right. Your Honor, I believe that, again, I don't know what particular doctrine the Court would choose, but I think that probably the Court could find some doctrine that would allow it in that circumstance to find it. But it shouldn't be moving toward the sliding scale element in that we're talking about here. Breyer, what about this? In J.L., the Court made quite a point of saying an accurate description of a subject's readily observable location is reliable in a limited sense, namely, identifying the person. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. That's right. What? Not concealed here. Well, that's an obvious difference. I mean, in one case it was concealed, in this case it isn't concealed. Except, Your Honor, that in fact when we're talking about drunk driving, whether the person is inebriated or not, the tip here is not concealed. Didn't the tip here have something to do with his driving around in a wild way, or at least an unusual way? I'm not sure I would have followed him. If I had been me, I would have. Anyway, you see the point. Right. But the question is, Your Honor, is the person inebriated or not, to take the State's best example. And that issue, that is a concealed element of criminal behavior, unless the person is actually driving erratically. If the person is driving erratically when the officers appear, then there's no Fourth Amendment issue. And it's clear that they have either reasonable suspicion or probable cause to pull over the vehicle. Do we know what it is? It seems to me you're willing to accept our allowing the police to stop the car with the kidnapped girl in the trunk. Once, you know, once you give away those, we're just arguing about details. Where do you draw the line? Does drunken driving fall on one side or the other of the line? And some of us may think drunken driving is pretty serious and probably, you know, as serious as having a kidnapped girl in the trunk. And, Your Honor, I didn't mean to concede that the Court should reduce the level of suspicion for reasonable suspicion in order to do that. More than that, I want you to say the Court shouldn't. Let the car go. Bye-bye, Los Angeles. What I'm saying is that the State is arguing for a sliding scale, and the State is arguing for a sliding scale. The State is arguing for a sliding scale that changes things. The Court postulated in Florida v. J.L. a situation that was so extreme, that was so unique, that the Court might decide to address it without even getting into reasonable suspicion. Breyer, that's what I would ask you, and I would press the point a little bit, because in the beginning of your brief it says that the anonymous tip, what you say, indicated that a Ford F-150 pickup truck had run someone off the road. That's right. Now, maybe you do have to know specially whether the person's drunk or not, but you don't have to have some special knowledge of anything concealed to know if somebody has run somebody off the road. But, Your Honor, the idea of running off the road is concealed. Even if the person weren't drunk, I think it's illegal to run someone else off the road. I'm not disagreeing with you, Your Honor. No. What I'm saying is that unless the person is still driving erratically by the time that the officers arrive, then that activity is concealed in the same way that the question of whether J.L. had a gun or not was concealed. You can't – the officers can't see it, and therefore, there's no reason to treat this case any differently than the case in J.L. They have to be able to see something like erratic driving or something else in order to be able to corroborate that. Scalia. And I assume you would also say, to tie it into Justice Breyer's question, you would also say that that tip, somebody ran me off the road, would not justify the police in stopping the car just to make sure that this car was not the one that drove the guy off the road, right? That's right, Your Honor. Never mind drunkenness. The tip doesn't say anything about drunkenness. It just said, this car drove me off the road. And you'd say the police could not follow that car, pull him over and ask, did you drive somebody off the road? Your Honor, absolutely, the police can follow that car, and that's what they should do, and in fact, that's what they did here. In this case, there was, as Your Honor said. Well, following the car is going to do them no good as to whether he drove somebody off the road. They're not looking for a drunk. They're looking for somebody who drove somebody off the road. Right. But if they can't see any erratic driving still going on, then where is it going to go? They're not going to prosecute for the reckless driving that allegedly took place 19 miles away. And they have followed that car for an additional 15 minutes. But what if the guy admitted it, you know? Other than that, Your Honor, it was just. Played mutton Jeff with him, and he, oh, yeah, I did, yeah. But, Your Honor, the person who's making the claim is nowhere to be found. She's gone. There's nowhere there. So there's no additional investigation related to this. Roberts What if the person said, okay, my name is this, you know, my phone number is this, this guy drove me off the road? They can't corroborate that until they stop the guy. Are you saying they have to? They have to wait, they have to make the call, see if the guy is there. Did you see the guy who just called? That guy's got to talk on his cell phone while he's driving? What I'm saying is, yes, they have to verify in some way so that they have some reason to believe that, in fact, the person that's telling them this is actually the person that is being set. So I'd like to preserve the remainder of my time. Roberts Thank you, counsel. Mr. Lawrence. Lawrence Mr. Chief Justice, and may it please the Court. A police officer may act on an anonymous tip that reports reckless or drunk driving by immediately stopping the vehicle without waiting to personally observe dangerous driving that could threaten others. An officer can reasonably rely on such a tip because the importance of the governmental interest in protecting the public from the ongoing and immediate threat of drunk driving outweighs the minimal intrusion of a traffic stop. Now, Petitioners argue that if you're going to stop a vehicle, you're going to stop it. Sotomayor Is every reckless driving drunk driving? Lawrence I'm sorry. Sotomayor Is every reckless driving drunk driving? Lawrence Not every reckless driving is drunk driving, but a report of reckless driving gives reasonable suspicion that the person may be drunk, and that's sufficient for the stop in this case. You've had a lot of cases where that's been the case. Sotomayor How about if somebody just calls and says X vehicle is driving recklessly, says no more. Doesn't describe how, doesn't give you any details as to how they know it. Is that enough for reasonable suspicion? Lawrence I would say the term reckless is, and the reason I say that is because driving is something that's intimately familiar to the average citizen. And when a citizen is going to call in and make a report, when they use the language reckless, that has meaning. That describes behavior that poses an ongoing threat to the public. Scalia But not necessarily drunkenness. I think there are a lot of people that get tickets for reckless driving who have not served jail terms for driving drunk. The two are far from synonymous. Lawrence Well, I wouldn't say they're synonymous, but I would say that one is the indicator of the other, because while you can correct. Sotomayor Why? How about speeding? There's plenty of people who speed regularly. Lawrence I would say a report of speeding is not sufficient to have reasonable suspicion of reckless driving. Sotomayor Isn't that reckless behavior? So how do you know someone who calls my mother, who can't drive above 50, thinks that when I go 51 that I'm speeding, and reckless? Lawrence I would say that, once again, the public has lots of familiarity with driving, and they can recognize the difference between poor driving and reckless driving or drunk driving. And when people are going to pick up the phone and make that call to 911, they're doing so because they perceive a danger on the roadway. And I think while the statistics are sparse on this, the footnote 2 in the government's brief is particularly helpful in this regard in that they note that for calls that are made to 911 centers for that are tracked by the States, between 25 and 50 percent of those calls result in arrests. And what that shows is the public knows what they see when they make these calls. This is a far greater risk. Scalia And between, what, 50 and 75 percent, they've stopped people without just cause. Lawrence Yes, but we are talking about reasonable suspicion here. So it doesn't require certain data. Scalia Or they've troubled people who shouldn't have been troubled. Lawrence That is correct. And that is always a possibility in the reasonable suspicion context. Roberts What if the call is, you know, I'm driving, this guy just drove by me, I looked over, he didn't have his seat belt on? I mean, can the police pull that guy over? Lawrence No, I don't believe that would be sufficient to pull it over, because you don't have any governmental – you don't have a threat to public safety in that context. Roberts Well, yes, there are laws against driving without a seat belt because that protects people's lives. Lawrence Certainly there are laws, and the officer, I guess, would have reasonable suspicion that there is a traffic violation. But I don't know that it would rise to the level of implicating public safety in this context. Scalia Well, reckless driving always does, whether it's the consequence of inebriation or not. Lawrence Yes. Scalia So a simple call saying, boy, this guy, you know, he cut in in front of me, he's changing lanes too frequently? Lawrence Yes. Scalia That enables the policeman, without observing any of that reckless driving, to stop the car further down the road. Lawrence Yes, provided, of course, that you have the additional details of the description of the car, the location that you can. Roberts I've never understood. What good does those – you know, let's say that I'm at a party, I don't like somebody there, I see they have a couple of drinks, I know what kind of car he drives. I can look at the license plate and I call, you know, 10 minutes later, I know where he goes, driving home, there's this car, it's white, whatever, it's got this license plate, it's swerving all over the road. Whether it is or not, the police go up, they pull him over and find out, yeah, he had – you know, fails the breathalyzer and I get my revenge. Lawrence The importance of those details is that they allow the officers to confirm that this is a personal observation, which is an important fact that's noted in Gates, that when you have a report of personal observation of illegal conduct, we can take that report more seriously. It's entitled to more credibility than just a bare record. Roberts I was just going to say my point is it need not necessarily be a personal observation of the person operating the car. It may be prior knowledge. And I gather one of the issues we're concerned about is people using this to, you know, exact revenge or do something else and have nothing to do with whether or not the person is violating the law on the highway. Lawrence Yes, that is true. But if the personal knowledge, if the officer can use that personal knowledge to confirm, okay, he was correct about the report of the car, report of the location, report of the direction, where it's supposed to be going, then you have some indication that the personal knowledge is accurate. As opposed to a bare tip when you're talking about hidden conduct, then you have to look to predictive details. And that takes us into the J.L. context. Kagan But if I understand you correctly, as long as you can identify the car, you need no specificity as to what the car has actually done. In other words, you know, just saying the driver was reckless is enough. Is that correct? Lawrence Well, I would say that recklessness carries information that is, has some specificity. Kagan What would fail your test? Lawrence Well, if a caller calls in and says, I saw him in a bar and he had one drink, he came out, got on the road and went away, one drink is not going to rise to the level that he wants to get. Breyer I mean, what his basic point is on the other side is these are all variations of the famous white horse defense. You don't know the white horse defense. Your Honor, my client was innocent because at the time of the crime, he was in Yugoslavia wearing a white horse, riding a white horse. And to prove it, I have the horse here in court. You see? I mean, you can't — it's bootstrapping, to put it more succinctly. All you know is that somebody came in and quoted a — and said there was a crime. And that's all you know. Now, when are instances where no more than the report that it's a crime, that's reasonable suspicion? Give me some other instances where the courts have upheld, well, that's enough. Lawrence Well, if a caller says — Breyer I'm not saying common sense. I'm saying what the courts have held. Sorry. Lawrence Where the courts have upheld based on just a bare tip or — Breyer a description that a crime is occurring. Where has the — that's all. I mean, and he — then we have a question of, well, is it in the one category or the other? Because what we have here, someone phones in and says a crime is occurring. And we know we've corroborated the following. If a crime was occurring, he was in a position to know, because he can define the — he can talk about the white horse or he can talk about the car. The closest case I can think of is Hensley, where an officer was relying on an arrest bulletin from another jurisdiction. And in that case, United States v. Hensley, that case the court did consider for purposes of whether a prior crime that had been committed, whether the officer had reasonable suspicion to stop that individual, it took into account the nature of the offense and whether there's a threat to public safety. Kennedy Correct me if I'm wrong, but my recollection of Hensley is you're right, Police Department 1 notifies Police Department 2, but the premise of the case, I had thought, was that Police Department 1 had reasonable suspicion. Well, there were two parts to the case. The second — the first part was whether you could make a detention based on a prior crime, as opposed to current — immediate occurring offense. And so it looked to the nature of the crime and whether there was a threat to public safety as valid considerations in authorizing a stop for a prior offense. The second part of that was the — allowing the officer to rely on another jurisdiction's reasonable suspicion. Sotomayor Hensley's victim wasn't a victim, meaning there was — it was an anonymous tip?  No. It was from another police jurisdiction. Sotomayor That's what I'm saying. So it wasn't an anonymous tip. Katyal No, it was not an anonymous tip. Sotomayor It wasn't public safety. It was the report of a crime by a known person. Katyal Yes, it was. And in that case, the Court said that you could arrest for prior — for a prior offense if it was a felony. It reserved the question of whether you could do so for a misdemeanor. So it's already looking at the nature of the offense and the threat to public safety. Kagan Mr. Lawrence, can I understand what you're saying? You're saying that in every case when we have to decide whether the threshold level of reasonable suspicion has been met or whether the level of probable cause has been met, that courts can take into account the seriousness of the offense and what would not count as probable cause for one crime will count as probable cause for another? Is that what you're saying? Lawrence What I'm saying is that in terms of when we can deem a tip reliable, White identified two components to the inquiry. One is the indicia of reliability and the other was the content of the tip. And so we have to take the seriousness of the offense, the threat to public safety, into account in determining when the officer can rely on that information. Kagan Well, I don't understand how what you're saying is different from what I just said. I mean, that would seem to me to work quite a substantial change in Fourth Amendment law, that when we decide whether reasonable suspicion exists, whether probable cause exists, that we get to take into account how serious the offense is. Lawrence Well, I think since the inception of the doctrine, this Court identified in Terry that reasonable suspicion results from a balancing of the governmental interest. Kagan A balancing occurs categorically. We decide that there's a reasonable suspicion standard by balancing interests. What we don't do is say, you know, depending on how serious we think this crime is, more or less will meet that reasonable suspicion standard. That would be a very substantial reworking of Fourth Amendment law. Or so it seems to me. Maybe I'm wrong. Lawrence Well, I believe that was something that was indicated in Hensley, that this Court looked to the nature of the offense in deciding whether or not the officer had reasonable suspicion at the inception in making that stop for a crime that had occurred two weeks earlier. And it didn't decline to consider whether or not that would be sufficient for a misdemeanor. But in taking the seriousness of the crime into account, in determining whether or not they could make that stop, that's a recognition that the balancing does play some role. And in White, this Court recognized that the reliability component is variable. There's a difference between probable cause and reasonable suspicion. And in J.L., this Court left open the question of at what point do we need no reliability because of the seriousness of the governmental? Kennedy Could you explain to me one more time why it's relevant that there were these details, that it was a particular kind of crime, that it was silver, license plate? That's this case. Suppose another case, the car just ran me off the road and it's the only car that's on Highway 1 between Fort Bragg and the State Park. Lawrence Well, I think it helps twofold. There's particularity, so you know who you're stopping. And it goes to the totality of the circumstances in helping confirm that the person actually observed what they're saying, so that you have – it goes to the reliability of the personal observation. So it builds, it adds an additional layer of the indicia of reliability so the officer can rely on it sooner. Kennedy Incidentally, it doesn't have much to do with the case. Is this a two-lane road? Lawrence Yes, it is. Kennedy That's what I thought. Lawrence A two-lane coastal highway, which obviously when someone runs somebody off the road poses a grave threat to public safety in that context. Ginsburg Here's a tip that someone is carrying a concealed weapon, and we have held that that has to be corroborated. You can take out a concealed weapon in an instant and fire it and kill lots of people. In fact, it was pointed out that there are more deaths caused by guns than there are from drunk driving. So what's the difference? The argument on the drunk driving is very, very dangerous, but so is having a gun in one's pocket. Lawrence Well, I think there's a significant difference between having a gun in your pocket and actually brandishing it or firing it. And I think if the jail case involves somebody threatening other people with a gun or firing the gun, it would involve a different calculus. And so you want to brandish it, it's too late, the damage will be caused. That is correct. But once you're driving drunk down the road, it's you have the threat is now posed to everybody on the highway because of the potential for that person to lose control because they're not driving. Scalia This call didn't say I think the guy was drunk. It just said somebody drove, you know, drove me off the road. Right? So this isn't a call that says there's a drunken driver. It's just a call that says somebody drove irresponsibly. Right? And that's enough. It's enough. Lawrence I would say that in this case it is enough, but I would say it's more than just driving irresponsibly. Running somebody off the road reflects that they're incapable of driving their car in a way that's without posing a safety threat to other people. And when you're dealing with reasonable suspicions. Scalia Okay. Really irresponsibly, okay? Lawrence  Scalia Really irresponsibly. Lawrence Very irresponsibly. Kagan So do you think, Mr. Lawrence, if the police had followed this man for half an hour and seen no other signs of erratic driving, and nobody can drunk drive, can drive drunk for half an hour without swerving, without doing something else, so they could still have stopped the car? Lawrence I think there may be a point where the threat to public safety would suggest that the reasonable suspicion is dissipated in that context. And so after 50 miles. Kagan Well, I thought you were saying as long as somebody had given an account that some time ago he had driven another driver off, he had run another driver off the road, it doesn't matter whether you're drunk, it doesn't matter anything. There was an account of an illegal act taking place, and that was enough to stop him. It doesn't matter what he's doing now. Lawrence Well, I believe that the threat to public safety plays a role in the balance. And so if that's dissipated, then at that point, you have the reliability of the tip that you're relying on is not as significant, or let me put it this way. When you have the threat to public safety balanced in the totality for purposes of reliability, if that dissipates, then you have to go back to the tip itself for whether it is internally reliable or whether it has enough to satisfy J.L. I think that when you have an immediate threat, when you have a report of drunk driving, the officer shouldn't have to wait to see that 50 miles to see if they can pass or fail. Scalia It wasn't a report of drunk driving. Lawrence I'm sorry. Yes, a report that someone ran him off the road. Scalia Somebody ran me off the road. Somebody was driving me really irresponsibly. And that's enough to stop him down the road. Lawrence It is. It is, because this is how drunk drivers display their actions.  Scalia What about cutting me off too quickly, you know? Lawrence I think that would be the case. If somebody ran in front of me, it really ticks me off. Roberts That would present a different set of circumstances. If you have an instant, a recognizable instant of bad driving as opposed to something that reflects recklessness or drunkenness, then you analyze the tip differently. And I think that it's the case. Alito How will somebody ever be able to observe another car driving ever be able to say that person was drunk? All they could observe is what they see. They don't know whether the person, what is causing that kind of behavior. Lawrence I agree. And that's because what we do, we look to the nature of their driving and draw reasonable inferences from that. And that's all officers can ever do. When they observe something, they draw reasonable inferences and determine whether it gives them suspicion. And one thing I would point out, that the CHP dispatchers, the testimony in this case, reflects that they ask. They ask the driver, well, what did you see, so that they can get that information and pass it along to give the officers much information. Scalia I think it's an entirely different case if the tip here was, you know, I was at a party, this guy got in his car, he should not have turned the key on in that car. This guy is really drunk. You should stop that car on the road. I think that's totally different from somebody just saying this guy swerved or this guy drove me off the road. You're just making the assumption that every one of those incidents demonstrates a drunk behind the wheel. And I just don't think that's true. Well, again, I would say it's not about demonstrating. It's not about certainty or probabilities. It's suspicion. And that behavior allows the officer to suspect drunk driving. Alito Well, why is it limited to drunk driving? I don't understand that. I've been on an expressway and I've had people go by me at they went by in a blur. It must have been going well over 100 miles an hour. Now, if the police catch up with that person, of course the person is going to slow down while the police follow the person. And then when the police decide to stop, they're going to go back to engaging in this intentional, extremely dangerous conduct. So I don't understand why there's a distinction between reporting that somebody necessarily is driving erratically so the person may be impaired and somebody who is where you have extremely reckless driving that's intentional. Well, I wouldn't draw that distinction. I think reckless driving in and of itself can pose a threat to public safety that also mandates an immediate stop. If someone's playing chicken with another car on the road, if someone is, you know, testing out their new Ferrari and it's going 100 miles an hour weaving in and out of lanes, those all represent threats to public safety in all those circumstances. Kagan But all crime represents a threat to public safety, and yet we have these standards. Yes, we do have standards, but the threat to public safety is part of the totality of circumstances. It's not something you invoke that wipes away all other inquiries. What we have here is we have a tip that if it was given by a known person, I think would undoubtedly allow the officer to pull that car over immediately. The question is, because it was anonymous. Ginsburg Why? Why? The we have the case of the trusted informer. The informer several times has given the police tips and it turned out to be right. And then we have another side, the anonymous person. Then there's somebody who calls, gives the correct name and address, but no record at all of reliability. Why should the fact that the name is known, the name of the informer is known if the police have no reason to believe, one way or another, that this informer is reliable? Well, I believe that when you're looking at at what point it's reasonable for the to rely on that tip coming in and act on it, that when somebody gives their name, that adds a layer of reliability to it, even without verification. And I think one thing that Gates says in the context of somebody who reports a personal observation of a crime is that even if we doubt their veracity, even if we have some question as to their motives, the fact that they are giving a personal observation and they note that it's a personal observation and giving a detailed account of what occurs, that report is entitled to a greater degree of reliability than other crimes. Scalia You don't think that a teenager standing on a street corner with a couple of other teenagers with a gun in his belt represents a threat to public safety? Not the same threat as in this case, Your Honor. No? Roberts Thank you, counsel. No, no, we're going to hear from Ms. Hovner first. Ms. Hovner.   Ms. Hovner. Mr. Chief Justice, and may it please the Court, brief car stops based on anonymous tips of reckless or drunken driving are reasonable under the Fourth Amendment because they serve a critical government interest in removing drunk drivers from the roadway? Sotomayor Please define for me what behavior would give police officers or what descriptors would be adequate for the police to think someone's drunk. Swerving, I know, has been mentioned, but reckless driving, there's been a lot of discussion that there could be a wide variety of reckless driving. What other things would a caller have to say? Hovner So, Your Honor, I think I agree with the observation that there are some behaviors that pose an ongoing threat to others on the roadway and some driving violations that don't. NHTSA, the National Highway Traffic Safety Administration, and other organizations do keep track of what kinds of behavior are associated with drunkenness. And the Court in this case, of course, looked at the particular behavior and said, is this really a reckless driving behavior, the kind of behavior that poses this imminent danger? So there is a line that courts would need to draw, but the courts that are engaging in this kind of analysis do draw that. And, of course, this is a real judgment call whether a violation occurred or not. I mean, why is this on one side and then tell me what's on the other? So, examples of behavior on the other might be the seat belt violation. And they also might be behaviors that it's a real judgment call whether a violation occurred or not. So, for instance, that person didn't fully stop at a stop sign. We might have doubts about whether an informant who we don't know anything about can accurately perceive that. But when we're talking about behavior like what we've got here. Sotomayor, I think what you're saying to me, am I correct, that almost any moving violation counts. Changing a lane without a signal, which seems to be endemic in Washington, but. I think that would be a harder case. I'm not sure that it's correlated with intoxication or impairment. As you say, it's very common. But I think the behavior that we're talking about here, driving somebody else off the road, is the kind of behavior that shows this person is a. Sotomayor, I'm putting this off on their lane. I think that's close to the line, Your Honor. I'm not sure that it's always illegal. And it's something where we may have doubts about whether the informant can accurately separate this person was breaking the law from this person wasn't. I think the courts are going to have to answer the question of whether this is, you know, the kind of behavior that poses a. Roberts, I think this is the question Justice Kagan asked earlier. How does the nature of the offense affect the reasonableness of the suspicion? I mean, in either case, you have, let's say, the seatbelt and the swerving driver. It's the same witness. He said, still, it's a white Ford. The reasonableness of the suspicion would seem to me to be totally divorced from what it's about. I think that's true, Your Honor. And we actually think, and, you know, we argued in our brief, that there is reasonable suspicion here. When an informant gives a basis for knowledge, you have reason to think they're an eyewitness. But the Court has also recognized that there are certain dangers on the roadway that allow intrusions even when we might not otherwise allow them. So, for instance, in the Sitz case, the Court said that drunk driving is such a great danger that we're going to allow even random stops of vehicles to detect drunk drivers. So I think the Court has indicated there are certain driving behaviors that are so dangerous will allow even suspicionless stops. And here, of course, we're not dealing with suspicionless stops. The questions from the Court have indicated some of the reasons why that's the case. Here we have a caller who's demonstrated their basis for knowledge, and officers have been able to confirm that. So we're talking about tips where the person relays the kind of details you could really only have if you were an eyewitness to this person's driving on the road. Roberts, Well, that's just not true. It's an acquaintance. I know what kind of car he drives. I know where he's going. I didn't see anything on the road, but I call the police and say, oh, there's this, you know, white Ford swerving all over the road. So, Your Honor, I think this class of people who are going to have the relevant knowledge is almost exclusively eyewitnesses. You may also have a few people who have seen the person's car and happen to know what direction they're headed in. But for the most part, we're talking about a very narrow class of individuals that are largely going to be eyewitnesses to this person's driving on the road. I'm talking about the concern that you want to have the police pull over people that you don't like, or you know somebody's got something bad in the car and you don't like it. And so you're going to take advantage of the fact that the police don't have to observe anything, and yet you can still get them to pull over this person. So somebody who's malicious, who's a prankster, is still going to have this kind of specialized knowledge. And that's not something a malicious prankster is necessarily going to have. Why is that different from the knowledge in J.L., that there were three young men and they were described, and the court said the one with the gun is the one with the plaid shirt? All of that was corroborated by the police, and yet we held that that was no indication that a crime had been committed. So, Your Honor, I think the critical thing that's present here that wasn't present in J.L. is the basis for knowledge. So as the passage that Justice Breyer read signals, we're talking there about concealed criminal activity, and the court pointed out in that case there's nothing in the tip that signals how the informant knows that this person had a gun. Here, in contrast, the person is telling you, I'm an eyewitness, this person just ran me off the road. Kagan, you think J.L. would have come out differently if the tipster had said, I just saw these guys and I saw, you know, one of them had a gun? I think this case comes out differently for two reasons. One is, yes, the tip would be stronger than the tip in J.L. if the person relayed an eyewitness basis. But the second has to do with the imminent danger here that's posed by a car that's moving down the roadway and is being operated by a potentially drunk driver, and the reduced expectations of privacy you have when you're talking about a vehicle stop. And those were front and center and sits where the Court said that even suspicionless stops can be justified by that particular danger. But that second danger, that you may have a drunken driver on the road, that danger can be eliminated by following the car. You don't have to stop the car right away, you can follow it. And if, indeed, the driver seems to be driving erratically, then you can stop. You'd have probable cause. I don't think you have to automatically allow a stop in order to prevent all of the horribles that are going to arise from drunk driving. Follow the car. If he's behaving like a drunk driver, then stop. Sir, Your Honor, officers could follow the car, and if they do, they may witness a subsequent dangerous behavior that could justify pulling over the car. The problem is that the subsequent dangerous behavior they may observe may be the car swerving into another lane and hitting another vehicle. Well, that is so remote. I mean, it seems to me you're asking us to adopt a broad rule that is contrary to what we normally do for searches and seizures, because now and then, it would seem to me very rarely, before the police can stop the drunk driver, he kills somebody. I mean, I suppose that could happen now and then, but it's pretty fanciful. Your Honor, I don't think it's a remote harm at all. This is a harm that causes one-third of all of traffic accidents, that takes tens of thousands of lives a year. And it's a harm that this Court has always said is a harm of the first order that justifies the kind of intrusions that we might not otherwise allow in other Fourth Amendment cases. Ginsburg. But here, we have the police did follow the vehicle for about 5 miles and saw nothing erratic about the driving. So perhaps if the police had immediately stopped the person, or but don't we have to take account that there was no corroboration? When the police get there, even if they could stop him instantly, when they have no corroboration, then that doesn't amount to reasonable suspicion. Your Honor, I agree that police might follow a car for such a long period of time that the reasonable suspicion would dissipate. On the facts of this case, Your Honor, the record indicates there were 5 minutes between when the officers first saw the car and when they pulled it over. They weren't 5 minutes of uninterrupted observation. They were 5 minutes in which the officers were turning their cars around, because they were headed in the opposite direction, were catching up to a car along the freeway. So the California Supreme Court analyzed that delay and found the fact that they didn't observe additional evidence. Breyer, I don't know if we have to get into the drunk driving. It's 3 miles south of the Humboldt County border on Mount — do you know the answer to this? Is it in the record? I mean, on many sections of that road in Mendocino County, you drive someone off the road, they're dead. I mean, they're sheer drops. And so I just wonder, if I look that up here, what's the situation where this supposedly took place? The only thing I can point to about that, Your Honor, is the way that the California Supreme Court treated this, which is that, because they pointed to the fact that this is a two-lane highway and that it's particularly dangerous on this particular road to engage in this behavior. But I don't know about, you know, whether there are cliffs on the side of the road. Roberts. What about the danger from the police side? In other words, they know or they suspect that the guy driving the white car has a lot of marijuana in the trunk. They have no basis for pulling him over. And they say, well, guess what, we got an anonymous tip that he was driving erratically, so we pulled him over. What protection is there against that? Your Honor, if police are willing to lie about what they saw or, you know, in the cases of sort of rogue officers, they may exist, but this rule isn't going to prevent — no rule is going to prevent that. Officers can just as easily lie about what they saw. Thank you. Roberts. Thank you, counsel. Mr. Kleven, you have 3 minutes remaining. In this case, we're talking about a single, uncorroborated tip of reckless driving. After that single incident, the car, the truck went for approximately 19 miles with no indication of any other problem and then was followed for up to 5 miles by the police officers, again with no indication of any erratic driving or any other violation that would have been a reason for pulling him over immediately. There's no reason to believe that the driver of this truck presented any kind of danger about being about to lose control, which is the argument that the State is relying on and the Federal Government, and neither one of them came up with any anecdote even where that has actually occurred, much less any statistics to show that that is a serious problem of people losing control while they're being under surveillance by the police officers. This case is even farther away from the bomb situation than J.L. was. In J.L., you had a person who was armed who could have pulled out a gun and started firing at any moment. Here you have something where there's no indication of any ongoing risk to the public. I don't think — I don't know that there's a good answer to the bomb question. I read through the transcript from the oral argument in J.L. I didn't see any — yeah, there didn't seem to be any good arguments, any good discussions there either as to which way the Court could go. But this case — in J.L., the Court said there's no reason for us to resolve that. We don't have to speculate about a situation where that would happen. In this case, I submit there's even less reason for the Court to speculate about the bomb situation or even the kidnapping situation. Well, I find that unsatisfactory because if you — unless you're willing to say it doesn't matter whether it's a bomb, an atomic bomb, a little bomb, then there must be — if you're going to draw the line someplace, then you're going to have to distinguish between those reports of crimes that are serious enough to be on one side of the line and those reports of a crime that are not serious enough to be on that side of the line. You either have to go all the way or you have to draw a line. And if you're going to draw a line, I would like to know where the line is. Well, Your Honor, except I don't think — I don't think you can draw the line in terms of reasonable suspicion because then you're going to have this kind of case. All right. Forget about reasonable suspicion. Just can it be done? You can say it can never be done, even if it's an atomic bomb, even if it's some other type of bomb. You can say that. Or you can say, no, there's a line someplace. If you're going to say there's a line someplace, then really I think you need to tell us where the line is. Your Honor, I think the line is certainly when we get into the bomb situation, but not in terms of reasonable suspicion. The severity of the crime does not affect it. But the Court could fashion a rule that would say there's an exception in this case that would apply. For a bomb. For any kind of a bomb. Well, no, I don't think. I think if there's a call in that says a white Prius has a bomb, that doesn't seem to be the sort of case under the totality of the circumstance where this Court would find reasonable suspicion. Scalia. What about drawing a line at intentional conduct? The guy who has a bomb is going to use it. He's intentionally going to use it. Or maybe intentionally doing action that is going to harm more than one person, as opposed to maybe this person might accidentally, because he's inebriated, hurt somebody. It seems to me there's a clear line between somebody who's bent on an intentional crime and somebody who might harm somebody because of his conduct. You like that line? I'll have another one, too, so you can go. Yes, Your Honor. I think those are two significant distinctions, certainly, between the bomb analogy and the situation, even in the drunken driving situation, where you don't have anybody who is intentionally trying to harm anyone, and the magnitude of the risk is much greater in the Boston case. So somebody has five drinks and goes and gets in the car. That's not intentionally trying to harm someone or recklessly? Well, in terms of their decision to get drunk, there's intent there. In terms of by the time the officer becomes aware of it, there's no indication that that drunk driver is going down the road trying to harm somebody. There is an indication that they may be too inebriated to be driving properly. And police officers have been pulling people over for that situation since the car was invented, and they're really good at it. Thank you, counsel. Counsel, the case is submitted.